BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>A white Google Pixel 3 XL cellphone in a black Incipio case. | Case No. 1:19-mj-10441-REB<br><br>MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION |

The United States of America, by and through Bart M. Davis, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby moves the District Court to reverse or vacate the Magistrate Judge's order denying the government's search warrant application. The application sought permission to place a subject's fingers on a cellphone to unlock it in order to conduct a forensic search. *See* ECF 1. The order denied the application, concluding that the search warrant would violate the subject's Fifth Amendment rights.

Because applying a subject's fingerprint to a device is not testimonial, permitting law enforcement to use fingerprints does not violate the Fifth Amendment privilege against self-incrimination. Using a fingerprint to open a cellphone is no more a Fifth Amendment violation

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 1

than a host of other practices approved as constitutional by the Supreme Court and the Ninth Circuit, including fingerprinting, photographing a subject, obtaining a voice or handwriting exemplar, or extracting a blood sample. This Court should reverse or vacate the order. Currently, a split in the magistrate court in this District exists. Thus, an order will also resolve the split.

## BACKGROUND

On April 30, 2019, Chief U.S. Magistrate Judge Ronald E. Bush issued a search warrant authorizing a search of a residence and a named individual (hereinafter "subject") in the District of Idaho for evidence of the possession of child pornography. *See* 1:19-mj-10436-REB, ECF 2. The search warrant permitted the search and seizure of any electronic devices found in the residence, or in the subject's possession. During the service of the warrant on May 2, 2019, agents encountered only the subject at the residence, and seized a Google Pixel 3XL cellphone (hereinafter "subject cellphone"). *See* ECF 1 at ¶¶ 14, 15.

The subject cellphone was locked, and could only be opened through the use of a passcode or a fingerprint. *See* ECF 1 at ¶¶ 16, 17. The same day agents seized the subject cellphone, the government submitted a complaint and arrest warrant for the subject, and also submitted an application in support of a search warrant. *See* ECF 1. The application sought a search warrant to permit law enforcement to place the subject's fingers onto the subject cellphone in order to unlock the phone. This practice, often called "use of biometrics," has been approved in search warrants in this district in the past. *See In the matter of the search of: The person of [REDACTED]; and a 2018 Audi A3 vehicle bearing Washington license plate number [REDACTED]*, Case No. 1:18-mj-10290-CWD; *In the matter of the search of: The property*

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 2

*located at [REDACTED] Nampa, Idaho 83651; and the person of [REDACTED],* Case No. 19-mj-10404-CWD.

The affidavit in support of the search warrant application explained that, in using biometrics to unlock a cellphone, time is often of the essence. *See* ECF 1 at ¶ 22. Depending on the phone, biometrics may no longer work after 48 hours. *Id*. The Magistrate Judge informed the government that he needed additional time to consider the search warrant application. The government filed a memorandum in support of the application that same day. (ECF 2). Six days after the government submitted the application, the Magistrate Judge issued an order denying it, and subsequently unsealed the order. (ECF 3, 4).

The order holds that permitting law enforcement to place the subject's fingers on the subject cellphone is testimonial and violates the Fifth Amendment. The order also concludes that the warrant would violate the Fourth Amendment, but only because of the Fifth Amendment violation. As the Court acknowledged, "the government's application turns on whether the individual's Fifth Amendment rights would be violated by the search and seizure." ECF 3 at 4. The government addressed the Fourth Amendment in its memorandum in support of the search warrant (ECF 2) and does not repeat those arguments here. Because the order is in error, the government moves this Court to reverse or vacate it.

JURISDICTION AND MOOTNESS

Under the Federal Magistrates Act, 28 U.S.C. § 631, *et seq.*, magistrate judges have the authority to decide non-dispositive pretrial matters. 28 U.S.C. § 636(b)(1)(A). The issuance of search warrants is included within the Magistrate's pretrial authority. *See Gomez v. United States*, 490 U.S. 858, 868 n.16 (1989). Pursuant to the Federal Magistrates Act, "[a] judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the

magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see In re Search of Info. Associated with Email Addresses Stored at Premises Controlled by the Microsoft Corp.*, 212 F. Supp. 3d 1023, 1029 (D. Kan. 2016). "The magistrate's legal conclusions are reviewed de novo to determine whether they are contrary to law." *Perry v. Schwarzenegger,* 268 F.R.D. 344, 348 (N.D. Cal. 2010).

Because of the six day delay in issuing the order, the government concedes that the subject's fingerprints will no longer unlock the subject cellphone. As the affidavit in support of the search warrant explained, the ability to unlock a cellphone with a fingerprint is eliminated under certain circumstances, including when the phone is not unlocked for a period of time. *See* ECF 1 at ¶ 22. The Google Pixel 3XL requires use of a backup pin, pattern, or password if more than 48 hours have passed since the user last unlocked the phone using the backup login method. *See* https://support.google.com/pixelphone/answer/6285273?hl=en.

This Court should nonetheless reverse or vacate the order for two reasons. First, this issue falls squarely with the capable of repetition yet evading review exception to mootness. Second, a split in the magistrate court regarding the use of biometrics in search warrants exists in this District. This Court should resolve the split.

In general, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). The Supreme Court has recognized several well-established exceptions to the mootness doctrine, including if a dispute is "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). A dispute is capable of repetition if "there [is] a reasonable expectation that the same complaining party would be subjected to the same action again," and it is likely to evade review if "the challenged action was in its duration too short to

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 4

be fully litigated prior to its cessation or expiration." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). That exception applies here. *See, e.g.*, *In re Search of Fair Finance*, 692 F.3d 424, 428–29 (6th Cir. 2012); *Phoenix Newspapers, Inc. v. U.S. Dist. Court*, 156 F.3d 940, 946 (9th Cir. 1998); *United States v. Brooklier*, 685 F.2d 1162, 1165 (9th Cir. 1982).

The government reasonably expects that it will be subjected to the same action again. The government presents a large number of applications in support of search warrants for cellphones to the magistrate court. Because of the prevalence of cellphones, most of which now have biometric features, the need to unlock cellphones using biometrics will continue to arise. And, due to the split in the magistrate court on this issue, the government's ability to obtain a warrant permitting the use of biometrics will depend upon which magistrate reviews the search warrant application.

This issue is also likely to evade review in the future. Generally, law enforcement has less than 48 hours to unlock a device using biometrics once it is seized. This provides insufficient time to prepare and submit a search warrant, receive the Magistrate Judge's order, seek review from the District Court, and then execute the warrant if the denial is reversed. As this case has illustrated, the use of biometrics is time-limited. The ability to challenge the denial of an application seeking to use biometrics is "in its duration too short to be fully litigated prior to its cessation or expiration." *See Weinstein*, 423 U.S. at 149. Thus, this issue is not moot and the Court should rule on it. If the Court agrees, it need not consider the argument for vacatur below.

Even if this matter were moot and no exception applied, this Court would have authority to *vacate* the Magistrate Judge's order, if not to reverse it. *See Alvarez v. Smith*, 558 U.S. 87, 94–96 (2009); *see also United States v. Raddatz*, 447 U.S. 667, 681 (1980) ("Congress made

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 5

clear that . . . the magistrate acts subsidiary and only in aid of the district court. . . . [T]he entire process takes place under the district court's total control and jurisdiction."). Vacating the order would be appropriate given the split in the magistrate court regarding the use of biometrics. While one magistrate judge issued the instant order denying the government's search warrant application, another has previously signed search warrants that permitted law enforcement to use a target's biometrics to unlock electronic devices. Vacating the order would resolve this split and ensure consistent treatment of search warrants involving biometrics in the magistrate court.

The need to use biometrics to provide access to cellphones for court-authorized searches is especially common in child exploitation investigations. Targets in such investigations often take extreme measures to protect devices containing images of child pornography. Given the important governmental interest in identifying victims of child exploitation, and the likelihood that this issue will arise again, this Court should resolve the split in the magistrate court and conclusively resolve the issue.

## ANALYSIS

The order is clearly erroneous and contrary to law. Permitting law enforcement to place an individual's fingerprints on a cellular phone is not testimonial. The Supreme Court has repeatedly held that compelling displays of physical features do not violate the privilege against self-incrimination. Neither the Supreme Court nor any federal circuit court have applied this analysis to the use of physical features to unlock a cellphone. Two federal district courts have, however. Both courts held that law enforcement's compelled use of biometrics to unlock electronic devices is not testimonial, and is not a violation of the Fifth Amendment. This Court should do the same, and reverse or vacate the order.

1. <u>Permitting law enforcement to compel an individual's fingerprints onto an electronic device is not testimonial.</u>

"[T]here is a significant difference between the use of compulsion to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating." *United States v. Hubbell*, 530 U.S. 27, 34–35 (2000). To qualify for the Fifth Amendment privilege, a communication must be: (1) testimonial, (2) incriminating, and (3) compelled. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 189 (2004). Compelling a person to provide a fingerprint, or to face a phone's screen, does not violate the Fifth Amendment. Even if that act is compelled *and* incriminating, it is not testimonial.

The Fifth Amendment prohibits a person from being a "witness" against himself. U.S. Const., amend. V. "Witnesses provide *testimony*, so that specifically is the forbidden compulsion: the government cannot force someone to provide a communication that is 'testimonial' in character." *In the Matter of Search Warrant Application for [redacted text]*, 279 F.Supp.3d 800, 803 (N.D. Illinois, September 18, 2017) (emphasis in original) (quoting *Hubbell*, 530 U.S. at 34).

For decades, the Supreme Court has found numerous acts akin to the use of biometrics not to be testimonial and therefore not protected by the Fifth Amendment. "It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the [Fifth Amendment] privilege against compulsory self-incrimination." *United States v. Dionisio*, 410 U.S. 1, 5-6 (1973). And the privilege "offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture . . . [because] [n]one of these activities becomes testimonial within the scope of the privilege." *United States v. Wade*, 388 U.S. 218, 223 (1967) (quoting *Schmerber v. California*, 384 U.S.

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 7

757, 763 (1966). The Supreme Court has applied this reasoning to hold that no Fifth Amendment violation occurred in the following circumstances:

- Putting on a shirt to see whether it fit the defendant. *Holt v. United States*, 218 U.S. 245, 252-53 (1910);

- Providing a blood sample to test for alcohol content. *Schmerber*, 384 U.S. at 763-765;

- Submitting to the taking of fingerprints or photographs. *Schmerber*, 384 U.S. at 764, *Wade*, 388 U.S. at 223;

- Providing a voice exemplar, that is, being compelled to say certain words so that the victims of a bank robbery could compare the defendant's voice to that of the bank robber. *Wade*, 388 U.S. at 222-23;

- Providing a handwriting exemplar, that is, being compelled to write words in order to compare them with the writing on a bank-robbery demand note. *Gilbert v. California*, 388 U.S. 263, 266-67 (1967).

*See In the Matter of the Search Warrant Application for [redacted text],* 279 F.Supp.3d at 803. (collecting cases).

The Supreme Court has explained that the compelled display of physical characteristics is not testimonial because a subject is "not required to disclose any knowledge he might have," "to speak his guilt," or "'to disclose the contents of his own mind.'" *Doe v. United States*, 487 U.S. 201, 211 (1988) (quoting *Curcio v. United States*, 354 U.S. 118 (1957)). The Ninth Circuit has held the same. "Requests by the prosecution for . . . fingerprint evidence from a defendant or a suspect are not prohibited by the Fifth Amendment right against self-incrimination because such evidence is not testimonial in nature." *N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1120 n.5

(9th Cir. 2001); *see also United States v. De Palma*, 414 F.2d 394, 397 (9th Cir. 1969) ("Identifying physical characteristics are not evidence of a testimonial nature."); *United States v. Sanudo-Duarte*, No. CR-14-01342-002-PHX-JAT, 2016 WL 126283, at *1 (D. Ariz. Jan. 12, 2016) (compelling palm prints after holding they were identifiable physical characteristics unprotected by the Fifth Amendment").

Under this well-established precedent, applying a fingerprint to an electronic device covered by a valid search warrant likewise should not implicate the Fifth Amendment. Law enforcement's action involves no compelled testimonial act by the subject. In other words, such action does not require the subject to speak his guilt, to disclose any knowledge, or to disclose the contents of his mind. Thus, existing precedent squarely applies to this new situation.

Two district courts that addressed this issue have so concluded.[1] The District Court for the Northern District of Illinois reversed a Magistrate's order denying the government's search warrant application seeking the use of biometrics to unlock electronic devices. *See In the Matter of the Search Warrant Application for [redacted text],* 279 F.Supp.3d at 807 ("the government's application to require the fingerprint seizure of the four residents does not violate the privilege against self-incrimination set forth in the Fifth Amendment."). The District Court for the District of Columbia likewise found that the government's search warrant application, seeking "authorization to compel the use of the subject's biometric features such as his fingerprints, face, or irises to unlock any subject devices found at the premises" did not violate the Fifth

---

[1] Three federal magistrates have issued published orders denying search warrant applications on that grounds that the use of biometrics is testimonial and violates the Fifth Amendment. Two of the orders were from the Northern District of Illinois, where the District Court later overruled their analysis. *See In re Application for a Search Warrant*, 236 F.Supp.3d 1066 (N.D. Ill. Feb. 16, 2017); *In the Matter of the Search of: The Single-Family Home and Attached Garage located at [redacted]*, 2017 WL 4563870 (N.D. Ill. Feb. 21, 2017). The third is from the Northern District of California, and the government has sought review by the District Court. *See Matter of Residence in Oakland, Cal,* 354 F.Supp. 3d 1010 (N.D. Cal. Jan. 10, 2019); 4:19-mj-70053-KAW (ECF 2) (N.D. Cal.).

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 9

Amendment. *In the Matter Of the Search Of [redacted] Washington, District of Columbia*, 317 F.Supp.3d 523, 540 (D.D.C., June 26, 2018).

Both of the district courts analyzed the identical issue presented here: whether permitting law enforcement to place a fingerprint on an electronic device is testimonial, and thus a violation of the privilege against self-incrimination. Both distinguished between the act of compelling the display or use of a physical characteristic from compelling a communication. *See* 279 F.Supp.3d at 803, 317 F.Supp.3d at 536. Both courts also noted that, because law enforcement will pick the fingers to be placed on the device, there is "no need to engage the thought processes of any of the residents at all in effectuating the seizure." 279 F.Supp.3d at 803; 317 F.Supp.3d at 536. The District Court for the District of Columbia quoted the District Court for the Northern District of Illinois in stating:

> [T]here will be no revelation of the contents of the Subject's mind with the procedure proposed by the government for collection of the Subject's biometric features. Rather, "[t]he government chooses the finger to apply to the sensor, and thus obtains the physical characteristic – all without the need for the person to put any thought at all into the seizure."

317 F.Supp.3d at 536 (quoting *In re Search Warrant Application for [redacted text]*, 279 f.Supp.3d 800, 804 (N.D. Ill. 2017); *see also Minnesota v. Diamond*, 905 N.W.2d 870, 876 (Minn. 2018) ("[The defendant's] act of providing a fingerprint to the police was not testimonial because the act did not reveal the contents of [his] mind."); *Virginia v. Baust*, 89 Va. Cir. 267, 2014 WL 10355635 at *4 (Va. Cir. Ct. Oct. 28, 2014) ("The fingerprint . . . does not require the witness to divulge anything through his mental processes.").

The District Court for the District of Columbia went on to conclude that "the use of the fingerprint is much more like the government's compelled use of other 'physical characteristics' of criminal suspects that courts have found non-testimonial even when they are used for

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 10

investigatory purposes rather than solely for identification." *Id.* at 536 (citations omitted).  "The 'distinction which has emerged' as a 'helpful framework for analysis' is that the Fifth Amendment 'privilege is a bar against compelling communication or testimony, but that compulsion which makes a suspect or accused the source of real or physical evidence does not violate it.'" *Id.* (quoting *Schmerber*, 384 U.S. at 764) (internal quotation marks omitted).

Under established Supreme Court precedent, and consistent with the federal district court analyses detailed above, allowing law enforcement to place a suspect's finger on a cellphone to unlock it through the use of a fingerprint compels no testimonial communication.  Use of biometrics is this circumstance is not meaningfully different than fingerprinting, photographing a subject, obtaining a voice or handwriting exemplar, or extracting a blood sample – all of which have been held to be non-testimonial by the Supreme Court and the Ninth Circuit.  Compelling the provision of physical characteristics like a fingerprint does not involve a testimonial act and does not violate the privilege against self-incrimination.

Both the subject and the subject cellphone were in law enforcement custody at the time of the government's search warrant application.  Thus, the government's request in the instant case has a stronger basis, and is less invasive, than the requests permitted by the district courts in Northern Illinois and the District of Columbia.[2]  This Court should find that the government's

---

[2] The order states that the "connection between the individual and the phone at issue here is more tenuous than it might be under other circumstances." ECF 3 at 7.  The connection between the subject and the subject cellphone is relevant to whether probable cause exists to detain the subject to obtain the fingerprints under the Fourth Amendment.  However, as the Court noted, "none of these facts are determinative of the Court's conclusion in this case," as the application turns on whether the Fifth Amendment is violated.  *Id.*  The government could have highlighted additional facts already before the Magistrate Judge, connecting the subject to the subject cellphone, if the Court had requested it.  This would have included information that the subject's e-mail account included "selfie" style photos of the subject that were taken with a Google Pixel 3XL.  *See* 1:19-mj-10436-REB (ECF. 2 at ¶¶ 50, 51).

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 11

search warrant application is proper and does not implicate the subject's Fifth Amendment rights.

2. <u>The order is clearly erroneous and contrary to law</u>.

The order disregards the precedent and analysis detailed above, and holds that placing the subject's fingers on his cellphone would violate the subject's Fifth Amendment rights. The order is clearly erroneous and contrary to law for several reasons. First, the order incorrectly interprets the search warrant as compelling the subject to choose which finger to place on the device. Second, the order conflated two separate requirements in the Fifth Amendment inquiry. The act must be testimonial *and* it must be incriminating. In this case, it may be incriminating, but it will not be testimonial. Third, the order failed to acknowledge the well-reasoned analysis by two federal district courts that contradicted its constitutional analysis. The government will address each in turn.

a. <u>The order mischaracterized the nature of the government's request.</u>

The search warrant application specifically requests authorization for "law enforcement to press the fingers, including thumbs of [the subject] to the touch identification sensor of the device(s) found on the Google Pixel 3 XL." (Dkt. 1 at ¶ 18, 26). Thus, the application makes it clear that law enforcement will apply the subject's fingers and thumbs to the subject cellphone. The subject would not have to do so. On three occasions, however the order stated that the government sought to compel the subject to use his/her fingerprints to unlock the cellphone. (Dkt. 3 at 1, 2, 6-7).

This distinction is important. Permitting law enforcement to choose the fingers and place them on the device does not involve the defendant's own thoughts. Thus, it does not require a testimonial communication. In contrast, compelling the subject to choose a finger to use does

involve the subject's thoughts, and may be testimonial. The government's application sought only the former, not the latter. The order's characterization of the nature of the government's request suggested a more difficult constitutional analysis than that implicated by the application, resulting in the erroneous conclusion that the act would be testimonial.

"The Fifth Amendment privilege is not triggered where the government merely compels some physical act, i.e. where the individual is not called upon to make use of the contents of his or her mind." *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d at 1345. As the District Court for the Northern District of Illinois pointed out:

> [T]he government agents will pick the fingers to be pressed on the Touch ID sensor . . . so there is no need to engage the thought process of any of the residents at all in effectuating the seizure. The application of the fingerprint to the sensor is simply the seizure of a physical characteristic, and the fingerprint by *itself* does not communicate anything.

279 F.Supp.3d at 804-805.

The order holds that pressing the fingerprints is an act of production that is testimonial because it would aid in the discovery, production, or authentication of the incriminating information on the cellphone. (Dkt. 3 at 7, 10). As addressed below, this conflates the distinct issues of whether the compelled act is testimonial and whether it is incriminating. An act of production is only testimonial if it implies what is in the subject's mind, and thus represents a communication from the defendant. *See Hubbell*, 530 U.S. at 41. The District Court for the Northern District of Illinois properly distinguished such an act of production from placing a subject's fingerprints:

> The government chooses the finger to apply to the sensor, and thus obtains the physical characteristic – all without need for the person to put any thought at all into the seizure. The amicus' position would be correct if the warrant required the *person* to decide which finger (or fingers) to apply. But when agents pick, the person's performance of the compelled act is not an act of communication by that person.

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 13

> Indeed, the person can be asleep – and thus by definition not communicating anything – when a seizure of this sort is effectuated.

279 F.Supp.3d at 804 (emphasis in original).

The order's characterization of the authorization sought by the search warrant allowed the court to leap over the analysis of whether such an act would be testimonial. By assuming that the subject would be required to choose which finger to place on the cellphone, the order concluded that the subject would be producing a testimonial communication. The cases the order cited in support of this conclusion illustrate this distinction. Each involved the compelled production of evidence that constituted testimonial communications because each required use of the subject's own mind to produce items that were not currently within law enforcement's custody or knowledge. *See Fisher v. United States*, 425 U.S. 391, 410, 411 (1976) (requiring taxpayers to provide tax-related documents pursuant to subpoena could qualify as testimonial if conceding the existence, possession, control and authenticity of the documents, but was permitted under the foregone conclusion doctrine); *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1343 (11th Cir. 2012) (compelling the decryption and production of computer hard drives was testimonial because it would require the use of the contents of the subject's mind by way of the decryption password); *cf Andresen v. Maryland*, 427 U.S. 463, 474 (1976) (the seizure of business records by law enforcement did not require the subject to "say or do anything," and was not testimonial as the subject had voluntarily committed to writing the contents of the items seized).

The District Court for the Northern District of Illinois distinguished a compelled fingerprint from a compelled production such as decryption:

> Again, the fingerprint seizure itself does not reveal the contents of the person's mind in the way that disclosure of a passcode would or in the way that disclosure of a cryptography key would. Yes, compelling someone to reveal information on

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 14

> how to decrypt data is compelling testimony from that person. But obtaining information from a person's mind is not what happens when agents pick a finger to apply to the sensor. So compelling physical access to information via the fingerprint seizure is no different from requiring someone to surrender a key to a safe whose contents otherwise would not be accessible to the government. The surrender of the key may be compelled, but the compelling of the safe's combination is forbidden . . . The same principle applies here: a person generally cannot be compelled to disclose the passcode (like the safe's combination) but can be compelled to provide the fingerprint (like the key to the safe).

279 F.Supp.3d at 806.

The order failed to recognize that, because law enforcement would choose the fingers to place on the cellphone, the subject was not being required to use the contents of his own mind, or to produce any sort of communication. The order went no further in its analysis of whether the act was testimonial, and instead focused on whether incriminating evidence would be discovered. This was error.

        b. <u>The order conflated the Fifth Amendment privilege's distinct requirements that a compelled act be both testimonial and incriminating</u>.

The order held that placing the subject's fingers on the device is a testimonial communication because it would provide "'authentication of incriminating information' and would 'aid in the discovery, production, or authentication of incriminating evidence'" (Dkt. 3 at 7) (*quoting Andresen*, 427 U.S. at 474). This analysis conflates two distinct issues: whether the act is testimonial, and whether the act results in incriminating evidence.

The Supreme Court has made clear that the inquiry into whether an act is testimonial does not turn on whether the act is incriminating. "If a compelled [action or] statement is not testimonial and for that reason not protected by the privilege, it cannot become so because it will lead to incriminating evidence." *Doe v. United States*, 487 U.S. 201, 208–09 n.6 (1988) (internal quotation marks omitted); *see also Hubbell*, 530 U.S. at 35 (recognizing that "a criminal suspect

may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice," even if those acts may be incriminating) (citations omitted); *Fisher*, 425 U.S. at 411 ("[A]lthough the [handwriting] exemplar may be incriminating to the accused and although he is compelled to furnish it, his Fifth Amendment privilege is not violated because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege.").

"[T]he fact that the physical characteristic yields incriminating information is *not* the dividing line between whether a compelled act comprises testimonial communication or not." *In the Matter of the Search Warrant Application for [redacted text]*, 279 F.Supp.3d at 805. "When deciding whether an act is testimonial or not, the governing case law simply does not take into account the power or immediacy of the incriminating evidence acquired from the physical characteristic." *Id*.

That an act of unlocking a device may lead to incriminating evidence—including that the subject has control of a particular device—is irrelevant to the Fifth Amendment analysis of whether the act is testimonial. "That compulsion which makes a suspect or accused the source of real or physical evidence does not violate" the Fifth Amendment. *Schmerber*, 384 U.S. at 764. The compelled use of physical characteristics will almost always result in incriminating evidence, but as the Supreme Court has made clear, this does not make the compelled act testimonial. The order erred by conflating these two distinct requirements, resulting in an analysis and ruling that is clearly erroneous and contrary to law.

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 16

c.     <u>The order failed to acknowledge the two federal district courts opinions that contradicted its analysis.</u>

In addition to contravening Supreme Court and Ninth Circuit precedent regarding compelled physical characteristics, the legal analysis in the order directly conflicts with the two published decisions of district courts.  Both decisions addressed the identical issue addressed by the order, but the order failed to acknowledge their reasoning.  Most strikingly, the order relied upon a decision of a magistrate in the Northern District of Illinois, stating that "[t]he same constitutional heartwood is found in this case."  Dkt. 3 at 8 (citing *In re Application for a Search Warrant*, 236 F. Supp. 3d 1066, 1073 (N.D. Ill. 2017)).  However, the order failed to note a subsequent decision by a United States District Judge in the same court that directly contradicted this earlier decision.  *See In re Search Warrant Application for [Redacted Text]*, 279 F. Supp. 3d at 800.  As detailed above, the district court in that more recent decision reversed a magistrate judge and held that no Fifth Amendment testimonial act occurs when agents press a subject's fingers against a Touch ID sensor on an iPhone.  *Id.* at 803–04.

Despite citing to the case, the order also did not acknowledge that the District Court for the District of Columbia's published decision contradicted its reasoning.  *See* Dkt. 3 at 6 (*citing In re Search of [Redacted] Washington, DC*, 317 F. Supp. 3d 523 (D.D.C. 2018) as authority that "[t]he protections against self-incrimination contained in the Fifth Amendment are not limited to verbal or written communications).[3]  As detailed above, the District Court for the District of Columbia held that "the compelled use of the Subject's biometric features" is not testimonial under the Fifth Amendment:

---

[3] The government cited to this opinion in its memorandum in support of the search warrant application, noting that it supported the conclusion that compelling a fingerprint is not testimonial.  *See* ECF 2 at 3.

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 17

> As other courts have recognized, there will be no revelation of the contents of the Subject's mind with the procedure proposed by the government for collection of the Subject's biometric features. Rather, "[t]he government chooses the finger to apply to the sensor, and thus obtains the physical characteristic—all without the need for the person to put any thought at all into the seizure."

*Id.* at 535–36 (collecting cases) (quoting *In re Search Warrant Application for [Redacted Text]*, 279 F. Supp. 3d at 804).  The order made no effort to grapple with this well-reasoned adverse authority.[4]

The order failed to consider recent federal court decisions that undermined its analysis and decision.  Perhaps as a result of not considering these well-reasoned district court opinions, the order relied upon a flawed and erroneous analysis of whether compelled physical characteristics are testimonial under the Fifth Amendment.  The order is contrary to law and should be reversed or vacated.

## CONCLUSION

The constitutional analysis in the order is clearly erroneous and contrary to law, and should be reversed or vacated.  The government's search warrant application would not result in a Fifth Amendment violation because compelling a subject's physical characteristic is not testimonial.  The order, if allowed to stand, will hinder the government's ability to conduct lawful searches pursuant to valid warrants, and cause a split among magistrates in the District of Idaho.  For these reasons, the Court should overrule or vacate the order.

---

[4] Nor did the order acknowledge adverse state-court authority, such as *Minnesota v. Diamond*, 905 N.W.2d 870, 876 (Minn.) ("[Defendant's] act of providing a fingerprint to the police was not testimonial because the act did not reveal the contents of [his] mind."), cert. denied, 138 S. Ct. 2003 (2018), or *Commonwealth v. Baust*, 89 Va. Cir. 267, 2014 WL 10355635, at *4 (Va. Cir. Ct. Oct. 28, 2014)  (holding that law enforcement could use a subject's fingerprint to unlock a phone, and that "[t]he fingerprint . . . does not require the witness to divulge anything through his mental processes") (cited in government's memorandum in support of search warrant, ECF 2).

MOTION TO REVERSE OR VACATE MAGISTRATE'S ORDER DENYING SEARCH WARRANT APPLICATION, Page 18

Dated this 16th day of May, 2019.

                                    BART M. DAVIS
                                    UNITED STATES ATTORNEY
                                    By:

                                    */s/ Justin D. Whatcott*
                                    Justin D. Whatcott
                                    Assistant United States Attorney